

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| AMERICAN FAMILY MUTUAL INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | 05 C 3839 (Related 05 C 3867) |
| BONNIE L. ROTH, d/b/a BONNIE ROTH AGENCY, CONNIE S. ROTH, d/b/a CONNIE ROTH AGENCY, and ROTH AND ROTH INSURANCE AGENCY, INC., d/b/a ROTH AND ROTH INSURANCE, | ) ) ) ) ) ) ) | Judge Ronald A. Guzmán |
| Defendants. | ) | |

| | | |
|---|---|---|
| BONNIE L. ROTH, d/b/a BONNIE ROTH AGENCY, CONNIE S. ROTH, d/b/a CONNIE ROTH AGENCY, | ) ) ) ) | 05 C 3867 (Related) 05 C 3839 |
| Plaintiffs, | ) ) ) | Judge Ronald A. Guzmán |
| v. | ) ) | |
| AMERICAN FAMILY MUTUAL INSURANCE COMPANY, | ) ) ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

American Family Mutual Insurance Co. ("AFMI") has moved for a rule to show cause why Bonnie L. Roth, Connie S. Roth, and Roth and Roth Insurance Agency, Inc. (collectively "the Roths") should not be held in contempt for violating the terms of the injunctions in this case and for other relief, which this Court construed as encompassing a motion to hold them in contempt. The Court referred the matters to Magistrate Judge Jeffrey Cole for a Report and Recommendation ("R&R"), and he recommended granting in part and denying in part the motion. The Roths now object to certain portions of the R&R in which Magistrate Judge Cole

recommended that the Roths be held in contempt for violating the injunctions that required the Roths to return to AFMI all materials related to AFMI customers and disclose to AFMI the AFMI customers the Roths contacted since the termination of their agency relationship with AFMI and the customers who responded to the solicitation. For the following reasons, the Court rejects the Roths' objections and adopts Magistrate Judge Cole's R&R in full.

## Findings of Fact

Pursuant to the Preliminary Injunction Order entered on August 15, 2006 and the Amended Preliminary Injunction Order entered on June 11, 2007, the Roths were "required to return to American Family all materials in their possession related to American Family customers." (Prelim. Inj. Order ¶ 4; Am. Prelim. Inj. Order ¶ 4.) In February 2005, Bonnie Roth downloaded from the AFMI computer database and printed lists[1] that included fourteen separate categories of policies held by her AFMI customers, including: business key, business owners package, casualty other than auto, commercial vehicles, commercial other than package, comprehensive health, condominium, personal liability, supplemental health, tenant, term life, universal life, watercraft and whole life. (Prelim. Inj. Hr'g Ex. 19.) Around that same time, Connie Roth downloaded and printed lists of: active and inactive prospects, active personal accounts, commercial active accounts, policy list auto, business key, active business owners, active casualty other than auto, active commercial vehicles, commercial/other package, condominium, dwelling/fire, homeowners, personal liability, supplemental health, tenant, term life, universal life, watercraft, whole life, annuity whole life. (*See* Prelim. Inj. Hr'g Exs. 6-13a-o, 19, 34, 35.)

---

[1] The Seventh Circuit held that the customer information in AFMI's database constitutes a trade secret under Wisconsin law. *Am. Family Mut. Ins. Co v. Roth*, 485 F.3d 930, 934 (7th Cir. 2007).

The Roths state they have given the printouts to Mr. Anthony Packard of the law firm Nisen and Elliott. (Pl.'s Ex. G, B. Roth Dep. at 16-17; Pl.'s Ex. J, B. Roth Dep. at 49. *But see* Pl.'s Ex. J, B. Roth Dep. at 41 (stating that Bonnie was unsure whether she gave Ex. 35, a list of her active AFMI accounts during the agency relationship, to Mr. Packard).) Mr. Packard represented the Roths from June 30, 2005 to August 30, 2006. (R&R 22.) The Roths' current attorney, Mr. William Tedards, stated that Mr. Packard planned to retain any printouts until the litigation ended. (*Id.* 22-23.) AFMI's counsel has represented to the Court that neither the Roths nor their counsel has delivered or returned any documents to AFMI. (*Id.* 22.)

AFMI sent the Roths commission statements that included their active customers' names, policy numbers, types of policies, terms of policies, and rates. On May 11, 2007, defendants filed as exhibits Bonnie Roth's commission statements from November 2004 to February 2005 and Connie Roth's commission statements from December 2003 and February to April 2005. AFMI moved to strike these exhibits from the docket, and Magistrate Judge Cole granted the motion because pursuant to the preliminary injunctions, defendants should have returned the confidential customer information to AFMI.

In addition, the Roths concede that Bonnie Roth had an electronic version of Exhibit 34 on her computer that she used with a service provider, Email Concepts. (Defs.' Opp'n Mot. Rule Show Cause 17.) Exhibit 34 is a web-based list of 1,847 recipients to whom the Roths sent an email dated May 22, 2005 via a service provider, E-mail Concepts. (Pl.'s Ex. G, B. Roth Dep. at 40.) When deposed in February 2007, Bonnie stated that she could not remember if the list of her active, inactive and prospective accounts while she was an agent of AFMI remained on her computer or if she had deleted it. (Pl.'s Ex. J, B. Roth Dep. at 42-43.) The Roths now assert that the file has been deleted. (Defs.' Opp'n Mot. Rule Show Cause 17.)

Pursuant to the Preliminary Injunction Order and the Amended Preliminary Injunction

3

Order, the Roths were also required "to disclose to American Family the American Family customers contacted since February 11, 2005 and the customers who have responded to the solicitation." (Prelim. Inj. Order ¶ 3; Am. Prelim. Inj. Order ¶ 3.) The Roths have produced a 700-page list of people they have admitted soliciting, with last names redacted and without any designation as to whether these people are active, inactive or prospective AFMI customers. They have also produced a list of 380 last names of the Roths' active policyholders and email addresses that was not in alphabetical order. In addition, the Roths have produced a list of thirty-seven AFMI customers who have purchased insurance from them.

## Discussion

Pursuant to Rule 72(b), a magistrate judge assigned to hear a pretrial matter dispositive of a claim or defense "shall enter into the record a recommendation for disposition of the matter, including proposed findings of fact when appropriate." Fed. R. Civ. P. 72(b). Motions for injunctive relief are dispositive. 28 U.S.C. § 636(b)(1)(A). Within ten days, a party may make "specific, written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b). "The district judge to whom the case is assigned shall make a *de novo* determination . . . of any portion of the magistrate judge's disposition to which specific written objection has been made." *Id.* "[I]n providing for a '*de novo* determination' rather than *de novo* hearing, Congress intended to permit whatever reliance a district judge, in the exercise of sound judicial discretion, chose to place on a magistrate's proposed findings and recommendations." *United States v. Raddatz*, 447 U.S. 667, 676 (1980).

"There can be no question that courts have inherent power to enforce compliance with their lawful orders through civil contempt." *Armstrong v. Executive Office of the President, Office of Admin.*, 1 F.3d 1274, 1289 (D.C. Cir. 1993) (citing *Shillitani v. United States*, 384 U.S. 364, 370 (1966)). "[S]cienter is not required in civil-contempt proceedings," *S.E.C. v.*

4

*McNamee*, 481 F.3d 451, 456 (7th Cir. 2007), and thus, an inadvertent violation does not preclude a contempt citation, *Commodity Futures Trading Commission v. Premex, Inc.*, 655 F.2d 779, 785 n.11 (7th Cir. 1981). A party in a civil contempt action is required to at least "make a good faith effort to comply with the district court's order." *Am. Fletcher Mortgage Co., Inc. v. Bass*, 688 F.2d 513, 517 (7th Cir. 1982). The district court may find a defendant in civil contempt if he has not been "reasonably diligent and energetic in attempting to accomplish what was ordered." *Id.* (quotation omitted). "If the court finds defendant in contempt of the original order, it may impose civil sanctions to coerce compliance with the order and to compensate parties for harm suffered as a result of defendant's non-compliance." *F.T.C. v. Trudeau*, No. 03 C 3904, 2007 WL 4109607, at *3 (N.D. Ill. Nov. 16, 2007). "To win a motion for civil contempt, a party must prove by clear and convincing evidence that the opposing party violated a court order." *Goluba v. Sch. Dist. of Ripon*, 45 F.3d 1035, 1037 (7th Cir. 1995) (quotation omitted).

The Roths have made specific written objections to two portions of Magistrate Judge Cole's R&R in which he recommended that they be held in contempt. The Court addresses each objection in turn.

First, the Roths contend that they have not violated the injunctions that required them "to return to American Family all materials in their possession related to American Family customers" (*see* Prelim. Inj. Order ¶ 4; Am. Prelim. Inj. Order ¶ 4). They concede that printouts of information regarding their active, inactive, and prospective AFMI clients' information remain in the hands of their former counsel, Mr. Packard, despite the fact that this Court ordered their return over a year ago when he was still representing them.[2] Even if the Roths were to

---

[2] A preliminary injunction is binding upon "parties to the action, their officers, *agents*, servants, employees, and attorneys, and upon those persons in active concert or participation

5

argue, which they have not, that they followed the advice of counsel, such reliance is not a defense in civil-contempt proceedings. *See McNamee*, 481 F.3d at 455-56. On the date the preliminary injunction was entered, the Roths had a duty to ensure that Mr. Packard returned the printouts to AFMI immediately. Instead, they did nothing to ensure their return. The Court agrees with Magistrate Judge Cole and holds the Roths in contempt for their violation of the injunctions. The Roths must facilitate the return of any and all materials in either their or Mr. Packard's possession.

The Roths also opine that Magistrate Judge Cole found them in contempt for failing to return Bonnie and Connie's AFMI commission statements. After thoroughly reviewing AFMI's motion for rule to show cause and Magistrate Judge Cole's R&R concerning the motion to hold them in contempt, the Court finds that Magistrate Judge Cole did not find the Roths in contempt based on their retention of the commission statements. Most notably, he did not order the defendants to return the commission statements, and thus he did not view the commission statements as within the scope of the motion for contempt or a basis for the contempt recommendation. He did, however, simultaneously issue a Memorandum Opinion granting AFMI's motion to strike the commission statements from the record because defendants had been required to return to AFMI all materials in their possession related to AFMI customers. The Roths do not object to Magistrate Judge Cole's striking the commission statements from the record, and AFMI has yet to move for a rule to show cause or for contempt regarding their retention of these materials. Accordingly, the Court finds the issue is not ripe for review and thus declines to address it.

AFMI documents are not the only materials that the Roths retained. They also retained

---

with them who receive actual notice of the order by personal service or otherwise." Fed. R. Civ. P. 65(d) (emphasis added).

information in electronic format either on their computer or accessible via their computers in a web-based database program. The plain meaning of the injunctions required them to "return" AFMI customer-related materials. The plain meaning of the term "return" means "to revert to a former owner." Random House Webster's College Dictionary 1126 (1999). In this day and age of electronic information, the requirement that the Roths "return" those materials clearly dictated that the Roths copy the AFMI materials in electronic format to a readable disk, CD-ROM, thumb drive or the like and return it to AFMI and then delete the AFMI materials such that they could not be accessed via the Roths' computers.

The Roths concede that they had an electronic version of Exhibit 34 on Bonnie's computer. (Defs.' Opp'n Mot. Rule Show Cause 17.) Exhibit 34 is a web-based list of 1,847 recipients of an email dated May 22, 2005 that the Roths sent via a service provider, E-mail Concepts. (Pl.'s Ex. G, B. Roth Dep. at 40.) Most, but not all, recipients of the May 22, 2005 email listed in Exhibit 34 were from the AFMI database. *See Am. Family Mut. Ins.*, 485 F.3d at 934. The Seventh Circuit has held that once the Roths entered a name into the AFMI database, it became AFMI's exclusive property. *See id.* at 932 ("[O]nce agents enter customer information in the database, the information becomes the exclusive property of the plaintiff, or at least exclusive as against the agent."). Bonnie stated that she deleted all of the names in Exhibit 34 from the Roths' Email Concepts database in February or March 2007. (Pl.'s Ex. B, B. Roth Dep. at 66-67.) Thus, the Roths concede that, from August 15, 2006 until February or March 2007, they violated the preliminary injunction provision that required them to return to AFMI information relating to people whose names the Roths had entered into the AFMI database. The Court holds the Roths in contempt because they were not reasonably diligent in their efforts to comply with the preliminary injunction. They waited half a year to delete such recipients' names from their computers or any web-based database program in which the names were stored

7

and never returned the data to AFMI.

In addition, on February 12, 2007, Bonnie Roth stated that she had had on her Dell laptop, as recently as the previous week, a list which segregated out into categories active, inactive and prospective customers from AFMI. (Pl.'s Ex. J, B. Roth Dep. at 42-43.) As of that date, she could not remember whether the list was still accessible from defendants' laptop or whether she deleted it after printing it. (*Id.*) Although Bonnie Roth later testified that this list and Exhibit 34 were one and the same, not two separate lists, the Court finds her testimony incredible. (*See id.* at 50-52.) Bonnie Roth clearly testified that she utilized a process independent of Exhibit 34 to segregate and categorize the names of AFMI customers and printed the list. (*See id.* at 39 (answering "Yes." to the question "You are telling me you went through an entirely separate process, independent of Exhibit No. 34, where you went through and took another list from American Family and compared it to everything in your database to determine what names you needed to isolate?"); *id.* at 42-45.) By retaining this AFMI material on her computer or any web-based database program which stored such material, the Roths acted in contravention of the Court's preliminary injunction order, and the Court holds them in contempt for their conduct.

Having found them in contempt, the Court orders the Roths to return and delete the above information from any computer or web-based database to which they have access. The Roths opine that they have already deleted some or all of this information. As noted by the Court on prior occasions, the record in this case is replete with instances in which the Roths have given disingenuous and incredible testimony. For this reason, the Court agrees with Magistrate Judge Cole that, despite their averments that they no longer have access to information relating to people whose names they had entered into the AFMI database, it is necessary to ensure that those assertions are true, *i.e.*, that the Roths are in compliance with the preliminary injunction.

8

Accordingly, the Court orders the Roths to make available for immediate forensic examination all computers they possess or have used in connection with AFMI customer-related material and to allow AFMI to access defendants' electronic database on any such computer. This forensic examination shall include a determination as to whether information pertaining to those active, inactive or prospective customers whose names the Roths entered into the AFMI database is or was stored on such computers and, if deleted, when the material was deleted. This Court holds that questions of confidentiality can be resolved by appropriate protective orders and/or by the retention of outside experts to report to the Court and counsel under appropriate instructions. The Roths shall bear the entire cost of compliance with this contempt order.

The Roths argue that they presumed there was no need to comply with the Court's injunctions because nobody was making a big deal about the return of the materials. That presumption was flawed. Neither party moved to modify either the preliminary injunction or the amended preliminary injunction. Thus, the Roths had a duty to comply with the Court's injunctions as written.

In sum, the Court finds there is clear and convincing evidence that the Roths have failed to make a good faith effort to comply with paragraph four of the preliminary injunctions. The Roths clearly were not diligent or energetic in their efforts to return printouts to AFMI and delete AFMI materials from the Roths' computers and/or database(s) to which the Roths have access. Accordingly, the Court holds them in contempt. To purge their contempt, the Court orders the Roths immediately to: (1) return and delete the information outlined above; (2) submit the computers and databases to which they have access to examination by a third-party expert (of the parties' mutual choosing) to determine as soon as practicable whether and when the information was deleted; and (3) bear the costs of all of the above.

Second, the Roths contend that they have not violated the injunctions that required them

9

"to disclose to American Family the American Family customers contacted since February 11, 2005 and the customers who have responded to the solicitation." (Prelim. Inj. Order ¶ 3; Am. Prelim. Inj. Order ¶ 3.) They argue that they have produced lists that fully complied with the injunctions.

The Roths have produced 700 pages listing only the first names of all the people they have solicited, including non-AFMI customers. The Court agrees with Magistrate Judge Cole that the Roths have failed to disclose the active, inactive and prospective AFMI customers they contacted since February 11, 2005. There is no reason for the Roths to have redacted the last names of AFMI's active, inactive and prospective customers (that the Roths had entered into the AFMI database) other than to make it impossible for AFMI to identify any person on the list.

The Roths also produced a list of 380 of their active customers which featured only email addresses and redacted out all names that appeared as part of the email addresses. When AFMI demanded complete disclosure, the Roths provided the last names, redacted the first names, and listed email addresses, but not in alphabetical order, despite the fact that the Roths have the capability to print their customer names in alphabetical order easily. (See Pl.'s Ex. H, Krumroy Dep. at 11.) Again, the Court finds that the Roths' production of the list in this manner is a perfect example of their attempt to obfuscate the identity of the customers. By making such a useless disclosure, the Roths have intentionally violated paragraph three of the preliminary injunctions.

The Roths also provided a list of last names, with first names redacted, of thirty-seven people who purchased insurance from them. This list does not comply with the injunctions' requirement that the Roths disclose the AFMI customers (including active, inactive and prospective customers that the Roths had entered into the AFMI database), who have responded to the Roths' solicitations. First, without first names it is impossible to identify with any

certainty whether such customers were AFMI customers. Second, the term "responded" encompasses not only those customers who actually purchased insurance from the Roths, but also those who responded in other ways, including, but not limited to, requesting more information, but did not purchase insurance from the Roths. The Roths may not pick and choose which customers to disclose. The preliminary injunctions dictate the scope of disclosure, and the Roths must comply.

Because the Court agrees with Magistrate Judge Cole that AFMI has presented clear and convincing evidence that the Roths have repeatedly failed to comply with paragraph three of the preliminary injunctions, the Court holds them in contempt. The Court orders them to purge the contempt by complying with paragraph three by immediately providing to AFMI: (1) the first and last names of AFMI's active, inactive, and prospective customers that the Roths input into AFMI's database and have contacted since February 11, 2005 (alphabetized by last name); and (2) information regarding whether each person has responded in any way to such contact.

Magistrate Judge Cole also recommended that the Court assess a monetary penalty against the Roths in an amount it deems appropriate based upon the financial resources of the defendants. "Civil contempt sanctions are properly imposed . . . to compensate the complainant for losses caused by contemptuous actions." *Tranzact Techs., Inc. v. 1Source Worldsite*, 406 F.3d 851, 855 (7th Cir. 2005). Thus, "attorney's fees may be awarded in contempt proceedings at the court's discretion." *Id.* Because AFMI has expended considerable resources due to the Roths' noncompliance with the Court's orders, the Court finds it is appropriate to compensate AFMI. AFMI may file an affidavit and supporting documents regarding attorney's fees incurred in this contempt action within fifteen days and defendants shall file personally verified financial statements within fifteen days thereafter.

## Conclusion

Having found that AFMI has established by clear and convincing evidence that the Roths have violated paragraphs 3 and 4 of the preliminary injunctions, the Court rejects the Roths' objections to the Magistrate Judge Cole's R&R regarding AFMI's motion for a rule to show cause and for contempt and adopts in full the recommendation that the Roths be held in contempt [137-1, 137-2]. To purge their contempt, the Court orders the Roths immediately to: (1) return to AFMI any original or copied printouts of information regarding their active, inactive, and prospective AFMI customers' information in their possession; (2) procure and return to AFMI any original or copied printouts of information regarding their active, inactive, and prospective AFMI customers' information possessed by their former counsel; (3) return to AFMI and delete information relating to active, inactive, and prospective AFMI customers whose names they had entered into the AFMI database from any computer or web-based database to which they have access; (4) submit the computers and databases to which they have access to examination by a third-party expert (of the parties' mutual choosing) to determine as soon as practicable whether and when the information was deleted; (5) provide AFMI with the first and last names of AFMI's active, inactive, and prospective customers that the Roths input into AFMI's database and have contacted since February 11, 2005 (alphabetized by last name) and information regarding whether each person has responded in any way to such contact; and (6) bear the costs of compliance with this contempt order.

SO ORDERED:      ENTER: 1/15/08

HON. RONALD A. GUZMAN
United States Judge

12