IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BONNIE L. ROTH, d/b/a BONNIE ROTH AGENCY, and CONNIE S. ROTH, d/b/a CONNIE ROTH AGENCY, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 05 C 3867 |
| AMERICAN FAMILY MUTUAL INSURANCE COMPANY, AMERICAN FAMILY LIFE INSURANCE COMPANY, and AMERICAN STANDARD INSURANCE COMPANY OF WISCONSIN, | ) ) ) ) ) ) | Judge Ronald A. Guzmán |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Bonnie L. Roth ("Bonnie") and Connie S. Roth ("Connie") have sued American Family Mutual Insurance Co., American Family Life Insurance Co. and American Standard Insurance Company of Wisconsin (collectively "American Family") for breach of contract and breach of the implied duty of good faith and fair dealing under Wisconsin law. Before the Court is defendants' (1) motion to confirm the arbitration award, for collateral estoppel effect of the arbitration award and for admission of the arbitration award as evidence; and (2) motion for summary judgment. For the reasons provided herein, the Court denies the former and grants the latter.

**I. Motion to Confirm the Arbitration Award, for Collateral Estoppel Effect of the Arbitration Award, and for Admission of the Arbitration Award as Evidence**

Defendants have moved: (1) to confirm an arbitration award dismissing a claim made by the Roths against American Family Securities, LLC, Daniel M. Coyne, Deborah R. Dudek and

Tamera B. Montagna for breach of contract for their having defamed the Roths and defamation; (2) for a ruling that the arbitration award has a collateral estoppel effect on the issues in this case; and (3) for admission of the arbitration award as evidence in this case. The Court denies the motion in its entirety.

First, American Family Securities, LLC, Coyne, Dudek and Montagna are not parties to the instant lawsuit. Accordingly, they are free to file their own lawsuit to confirm the award pursuant to the Federal Arbitration Act, 9 U.S.C. § 9, but they may not do so within the context of this lawsuit.

Second, "[u]nder Wisconsin law, the collateral estoppel doctrine applies when an issue was actually litigated and decided and its resolution was necessary to the prior disposition." *Schertz v. Waupaca County*, 875 F.2d 578, 581 (7th Cir. 1989). Having reviewed the arbitration award in *Roth v. American Family Securities*, LLC, No. 07-497 (Jan. 18, 2008), it is impossible to determine whether the arbitration panel's resolution of the issue regarding defendants' alleged breach of the Roths' employment contracts was necessary to the arbitration panel's decision. Any one of the arbitration respondents' arguments, including that the claim violated Rule 10106 of the Code of Arbitration and that the statements in the Roths' Form U5 are absolutely privileged could have convinced the panel to rule in respondents' favor. Thus, the Court holds that collateral estoppel does not apply in this case.

Third, because the arbitration panel's ruling does not shed light on whether the respondents' affirmative defenses to the arbitrated claim carried the day, the arbitration award does not aid this Court in determining any of the issues in the instant litigation. Thus, the Court sees no need to admit the arbitration award as evidence into the summary judgment record.

## II. Motion for Summary Judgment

### A. Facts[1]

Unless otherwise noted, the following facts are undisputed. From July 1997 until February 15, 2005, Connie was an agent of American Family. (Defs.' LR 56.1(a)(3) Stmt. Re: Connie ("Defs.' LR 56.1(a)(3) C.R.") ¶ 2.) From December 2002 until February 15, 2005, Bonnie was an agent of American Family. (Defs.' LR 56.1(a)(3) Stmt. Re: Bonnie ("Defs.' LR 56.1(a)(3) B.R.") ¶ 1.) Bonnie and Connie entered into agency contracts with American Family Mutual Insurance Co., American Family Life Insurance Co. and American Standard Insurance Company of Wisconsin[2] that included the following language in Section 6.h.2: "In no case shall notice of undesirable performance be required prior to termination if the performance in question involves a violation of Sec. 4.i. or any other dishonest . . . conduct . . . ." (*Id.* ¶¶ 6, 9; Defs.' LR 56.1(a)(3) C.R. ¶¶ 6, 9; Defs.' Ex. 16, Agency Agreements § 6.h.2.) Section 7.c of Bonnie and Connie's agency contracts states that "all provisions contained in the Company's Agent's Manuals and all changes to them shall be binding upon you." (Defs.' Ex. 16, Agency Agreements § 7.c.)

Richard Steffen is American Family Mutual Insurance Co.'s Sales Vice President for the Great Lakes Region and is responsible for terminating agency contracts in that region. (Defs.' LR 56.1(a)(3) C.R. ¶ 93; Defs.' LR 56.1(a)(3) B.R. ¶ 116.) On February 15, 2005, Steffen terminated Bonnie and Connie's agency contracts because performing as agents, they had

---

[1] The Court strikes American Family's replies to the Roths' LR 56.1(b)(3)(B) responses because the local rule does not contemplate such replies. The Court notes that it does not strike American Family's replies to the Roths' LR 56.1(b)(3)(C) responses because those replies are contemplated by the local rule.

[2] Although the Roths also entered into registered representative agreements with a separate entity, American Family Securities, LLC, they have not sued it for breach of that agreement in the instant litigation.

engaged in dishonest activity in violation of paragraph 6.h.2. (Defs.' LR 56.1(a)(3) C.R. ¶ 102; Defs.' LR 56.1(a)(3) B.R. ¶ 116; Steffen Dep. 65-66 (stating that he terminated the Roths' insurance agent contracts because they had signed other people's signatures). Deborah Dudek, the Roths' District Manager, delivered the termination letter to the Roths. (Defs.' LR 56.1(a)(3) C.R. ¶ 107; Defs.' LR 56.1(a)(3) B.R. ¶ 119.)

**B. Discussion**

Summary judgment is to be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The court resolves all ambiguities and draws all reasonable inferences in favor of the nonmoving party. *Michas v. Health Cost Controls of Ill. Inc.*, 209 F.3d 687, 692 (7th Cir. 2000). "A motion for summary judgment is not an appropriate occasion for weighing the evidence; rather, the inquiry is limited to determining if there is a genuine issue for trial." *Lohorn v. Michael*, 913 F.2d 327, 331 (7th Cir. 1990).

The Roths have sued American Family for breach of contract and for breach of the duty of good faith and fair dealing implied in all contracts under Wisconsin law. They argue that they have fully and satisfactorily performed their obligations under their agency agreements and American Family breached the express terms of the agreements by terminating them on fabricated pretexts.

"In Wisconsin, '[t]o state a claim for breach of contract [a] plaintiff must allege (1) the existence of a contract creating obligations flowing from defendant to plaintiff; (2) a breach of those obligations; and (3) damages from the breach.'" *Ruffin v. Milwaukee Metal Prods.*, No.

4

04-C-0976, 2007 WL 172611, at *6 (E.D. Wis. Jan. 18, 2007) (quoting *Uebelacker v. Paula Allen Holdings, Inc.*, 464 F. Supp. 2d 791, 801 (W.D. Wis. 2006)). "[T]he primary goal in contract interpretation is to determine and give effect to the parties' intention at the time the contract was made." *Farm Credit Servs. of N. Cent. Wis. v. Wysocki*, 627 N.W.2d 444, 448 (Wis. 2001). "When the language is unambiguous, we apply its literal meaning." *Id.* While a minor breach of contract does not usually relieve the other party of the obligation to perform, such a rule is inapplicable where a contract explicitly provides for termination upon the occurrence of a condition. *Woodland Realty, Inc. v. Winzenried*, 262 N.W.2d 106, 109 (Wis. 1978). *Cf. Thomas v. Beaver Dam Mfg. Co*, 147 N.W. 364, 365 (Wis. 1914) (stating that when a contract specifies the grounds upon which an employer can terminate an employee, then the employer "acting in good faith and within the terms of its contract, ha[s] a right to determine for itself whether any of the stipulated grounds for discharging" the employee existed).

In addition, "Wisconsin law recognizes that every contract imposes an obligation of good faith in its performance." *Uebelacker*, 464 F. Supp. 2d at 803. "[T]he rule implying a covenant of good-faith conduct in all contracts is intended as a guarantee against arbitrary or unreasonable conduct by a party." *Foseid v. State Bank of Cross Plains*, 541 N.W.2d 203, 213 (Wis. App. Ct. 1995) (quotation omitted). However, "if a contract expressly provides a party with certain rights, exercising those rights cannot amount to a breach of the implied duty of good faith." *Uebelacker*, 464 F. Supp. 2d at 803.

The parties agree that they entered into the agency contracts that created obligations American Family owed to the Roths. The Roths do not argue that any contract term at issue is ambiguous.

Thus, the contested issue in this case is whether American Family breached the agency

5

contracts when it terminated them. To this end, the Court notes that the parties raise the following arguments, among others, as to whether: (1) the Roths violated their registered representative agreements with non-party American Family Securities, LLC; (2) whether a violation of those agreements and non-party American Family Securities, LLC's manual provided a basis for terminating the agency contracts between the Roths and the defendants in this case (American Family Mutual Insurance Co., American Life Insurance Co. and American Standard Insurance Co. of Wisconsin); and (3) whether the Roths' alleged violation of the federal CAN-SPAM Act, 15 U.S.C. § 7701, *et seq.* provided a basis for defendants' terminating the Roths' agency contracts. However, the above issues are mere surplusage, and accordingly, the Court need not address them. *See, e.g., Black v. St. Bernadette Congregation of Appleton*, 360 N.W.2d 550, 564-65 (Wis. App. Ct. 1984) (noting that when a contract is terminated based on multiple conditions, a plaintiff in a breach-of-contract action must negate that each condition occurred). American Family has provided other reasons for terminating the Roths' agency contracts, *i.e.*, two incidents involving the Roths' dishonesty, and the facts surrounding these incidents are not in dispute. Given these undisputed facts, no rational jury could find in the Roths' favor, or in other words, no rational jury could find that the Roths did not engage in dishonest conduct and that American Family did not properly exercise its right to terminate the Roths' agency agreements.

      The Roths entered into agency contracts with American Family Mutual Insurance Co., American Life Insurance Co. and American Standard Insurance Co. of Wisconsin. (Defs.' Ex. 16, Agency Agreements § 1.) Section 6.h.2 of the Roths' agency contracts provided that these entities could terminate the contracts without notice if the Roths' performance involved any dishonest conduct. (Defs.' LR 56.1(a)(3) B.R. ¶¶ 6, 9; Defs.' LR 56.1(a)(3) C.R. ¶¶ 6, 9; Defs.'

Ex. 16, Agency Agreements § 6.h.2.) Thus the Court holds that the plain language of the agency contracts shows that an agent's engaging in dishonest conduct during her performance of the contract constitutes both a material breach and a condition that permits American Family to terminate the contract. (*See* Defs.' Ex. 16, Agency Agreements § 6.h.2.)

On February 15, 2005, Steffen, American Family Mutual Insurance Co.'s Sales Vice President for the Great Lakes Region, terminated Bonnie and Connie's agency contracts because they had engaged in dishonest activity in violation of Section 6.h.2 of their agency contracts. (Defs.' LR 56.1(a)(3) C.R. ¶¶ 93, 102; Defs.' LR 56.1(a)(3) B.R. ¶ 116.) He terminated their contracts based on his conclusion that Bonnie and Connie had signed other people's signatures on American Family documents. The Court addresses each Roth's termination in turn.

It is undisputed that Steffen terminated Bonnie's agency agreement because Bonnie signed the signature of another agent, Ray Collins, on a customer's life insurance application, although Collins was not present during the application process. (Defs.' LR 56.1(a)(3) B.R. ¶ 113.) It is also undisputed that by signing Collins' signature, Bonnie misrepresented that he had witnessed questions the customer had asked and statements the customer had made and attested to giving the customer particular information during the application process. (*Id.* ¶¶ 111-13; Defs.' Ex. 12, Steffen Dep. 61-64.)

To support its position that signing another agent's signature on an application constitutes dishonest conduct, American Family points to the American Family Life Compliance Manual ("LCM").[3] (Defs.' Ex. 19, Life Compliance Manual.) The LCM states that "*[t]he*

---

[3]Under the plain language of Section 7.c of the Roths' agency contracts, they were bound by the provisions of the LCM. (Defs.' Ex. 16, Agency Agreements § 7.c ("[A]ll provisions contained in the Company's Agent's Manuals and all changes to them shall be binding upon you.").) Accordingly, the Court may properly rely on the LCM to determine whether the Roths' activity constitutes "dishonest conduct" as used in Section 6.h.2 of the agency contracts.

*agent/licensed CSR taking the application must sign as witness, verifying that he/she has written the application and seen the owner/(proposed) insured sign the application.*" (*Id.* at AF2932 (emphasis added).) The LCM also instructs: "**Do** complete the application in a face-to-face interview with the (proposed) owner and each proposed insured; have the . . . proposed insured . . . sign the application in the agent's presence and sign as witness to verify that this procedure has been followed." (*Id.* (emphasis original).)

Bonnie argues that her signing Collins' signature does not constitute dishonest activity because she was acting as the agent at the point of sale and completing the transaction for Collins with his permission. However, regardless of her role in the sale or whether Collins had given her permission to do so, what makes her conduct dishonest is that she did not sign her own name as the witness, as she was the only person who witnessed the customer's application, and instead signed as if Ray Collins himself had verified the information in the application. This misrepresented to American Family that Ray Collins had witnessed and verified the application process.

Bonnie attempts to establish that her dishonesty did not motivate American Family to terminate her agency contract via a statement of Robert Krumroy, the founder and president of Identity Branding. His statement is hearsay, however, and the Court disregards it on that basis alone. (*See* Pl.'s LR 56.1(b)(3)(C) Stmt. B.R. ¶ 10; Pl.'s LR 56.1(b)(3)(C) Stmt. C.R. ¶ 10.) In addition, the Court notes that because the summary judgment record does not contain Krumroy's deposition, plaintiffs' additional statement of fact violates LR 56.1(b)(3)(C)'s requirements, and this provides another independent basis for striking this statement of additional fact.

The closest Bonnie comes to fending off summary judgment with regard to whether dishonest conduct motivated American Family to terminate her agency contract is the statement

of Jeffrey Burke, American Family's termination review officer. (Pl.'s LR 56.1(b)(3)(C) Stmt. B.R. ¶ 7; Pl.'s LR 56.1(b)(3)(C) Stmt. C.R. ¶ 7; Def.'s Ex. 14, Burke Dep. 93.) During his deposition, Burke was asked the following question: "Do you recall any discussion with respect to the general attitude or cooperativeness of Connie and/or Bonnie Roth as they functioned as agents with their district manager and sales manager?" (Def.'s Ex. 14, Burke Dep. 93.) Burke replied "I don't think – if I recall, the relationship between the district manager and the Roths was not very good. . . . I just remember that being part of the situation, but I don't recall the details around that." (*Id.*) This statement is clearly insufficient to preclude summary judgment. Bonnie fails to provide any details from which a jury could reasonably infer that Steffen, the decisionmaker, had knowledge that her relationship with the district manager was not very good or that the poor relationship somehow tainted Steffen's decision to terminate her agency contract. *See Albiero v. City of Kankakee*, 246 F.3d 927, 932 (7th Cir. 2001) (stating that "evidence must create more than some metaphysical doubt as to the material facts" and "[a] mere scintilla of evidence in support of the nonmovant's position is insufficient" (quotations omitted)).

Further, Bonnie does not attempt to raise a triable issue as to pretext or bad faith by showing that her conduct was insufficient to motivate American Family's decision to terminate her agency contract. For example, she does not point to any other agent who signed another agent's signature on a policy application but was not terminated by American Family for violating Section 6.h.2 of the agency contract.

Unfortunately for Bonnie, based on the undisputed facts before the Court and viewing all disputed facts in her favor, no rational jury could find that (1) she had not engaged in dishonest conduct; (2) her conduct did not satisfy a condition for the termination of the agency contract;

9

(3) her conduct did not constitute a material breach; or (4) that American Family breached its implied duty of good faith and fair dealing. Accordingly, the Court grants American Family's motion for summary judgment as to Bonnie's claims.

With regard to Connie, it is undisputed that Steffen terminated her agency agreement because she signed the signature of policyholder Tahnya Rooney on a policy amendment, illustration and receipt relating to Rooney's variable universal life insurance policy. (Defs.' LR 56.1(a)(3) C.R. ¶¶ 100-02.) Steffen relied on the representations of Connie's state Sales Director, Tamara Montagna, regarding an investigation of signatures that did not match in Rooney's variable universal life insurance policy file. (*Id.* ¶ 101.) The only illustration received by American Family from Connie had Rooney's first name signed and misspelled as "Tahyna." (*Id.* ¶¶ 57-58.) On February 11, 2005, Connie met with Montagna and Dudek, Connie's District Manager, and Connie stated that she had not seen Rooney after Rooney signed the application (a precursor to the ultimate issuance of the policy), she did not know why Rooney's signature would be different on these three forms from the signature on the original application and she did not know why the first name of one of the signatures on these three documents is spelled differently than the others. (*Id.* ¶ 59.) On February 14, 2005, Montagna spoke with Rooney, who stated that Connie must have signed the three forms, and after Rooney saw the signatures on the three forms, she wrote next to each, "This isn't my original signature. I will sign each page for your records." (*Id.* ¶¶ 60-61.) Steffen terminated Connie's agency agreement because he concluded that Connie's signing of Rooney's amendment, illustration and receipt was dishonest. (*Id.* ¶¶ 102, 105.) After her termination, Connie drafted an affidavit that Rooney signed which stated that Rooney asked Connie to sign her name and approved of her doing so. (*Id.* ¶¶ 63-64.)

To lend support to its position that signing a policyholder's signature on an amendment,

10

illustration and receipt constitutes dishonest conduct, American Family again points to the LCM, which provides that: "Signatures form the basis of the Company's legal contract (policy) with the policyowner. It is imperative that the proper people sign documents, and it is the agent's responsibility to ensure that this occurs." (Defs.' Ex. 19, Life Compliance Manual AF2932.) It also states that "[a]ll . . . insurance forms (including amendments, beneficiary changes, Policy Change forms, etc.) MUST BE SIGNED BY THE PARTY INDICATED ON THE SIGNATURE LINE. There are no exceptions." (*Id.* AF2933 (emphasis original).) The LCM further states: "Do not sign as a witness if you did not see the person sign the form. An agent should only sign as a witness if the agent actually sees the party indicated on the signature line sign the form." (*Id.*) Lastly, the LCM provides: "*Do not sign the owner's/proposed insured's name for them, even if the agent has authorization to do so.*" (*Id.* (emphasis added).)

Again, Connie argues that signing Rooney's name on the policy amendment, illustration and receipt does not constitute dishonest conduct because Rooney authorized her to do so. Regardless of whether Rooney had given her permission, Connie's conduct was dishonest in that it misrepresented to American Family that Rooney had actually signed the documents and Connie had actually seen her sign the documents, when, in fact, neither had occurred.

Based on the undisputed facts before the Court and viewing all disputed facts in Connie's favor, a rational jury could not find that her conduct failed to satisfy the condition of dishonest activity upon which American Family based its termination of the agency contract, her conduct was not a material breach of that contract, or American Family breached its implied duty of good faith and fair dealing. First, it is undisputed that the conduct at issue occurred. Second, to the extent that Connie relies on Krumroy and Burke's statements to show that dishonesty did not motivate American Family to terminate her contract and that American Family acted in bad

11

faith, the Court holds that these statements are insufficient to preclude summary judgment for the same reasons provided in its discussion of Bonnie's claims. Third, she has not provided any evidence that her conduct was insufficient to motivate American Family to terminate her agency contract, *e.g.*, that, in the past, American Family did not consider another agent's signing a policyholder's signature and signing as a witness to that signature sufficient grounds for termination of the agency contract.

The Court holds that, based on the undisputed facts in the record and viewing all properly disputed facts in a light most favorable to the Roths, no rational jury could return a verdict in their favor. Accordingly, the Court grants defendants' motion for summary judgment.

## **Conclusion**

For the reasons provided herein, the Court denies defendants' motion to confirm the arbitration award, for collateral estoppel effect of the arbitration award and for admission of the arbitration award as evidence [doc. no. 74] and grants defendants' motion for summary judgment [doc. no. 72]. This case is hereby terminated.

**SO ORDERED.**         **ENTER:**

September 23, 2008

_____
**HON. RONALD A. GUZMAN**
**United States District Judge**